**INTERBANK INVESTMENTS, L.L.C.,
a Colorado corporation, Plaintiff–
Appellant and Cross–Appellee,**

**v.**

**VAIL VALLEY CONSOLIDATED WA-
TER DISTRICT, a quasi-municipal cor-
poration; and Eagle River Water and
Sanitation District, a quasi-municipal
corporation, Defendants–Appellees and
Cross–Appellants.**

No. 99CA0477.

Colorado Court of Appeals,
Div. II.

Sept. 14, 2000.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. 2000.

Haligman, Lottner, Rubin & Fishman, P.C., Richard I. Brown, Curt Todd, Michelle Hargis Dillard, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Collins and Cockrel, P.C., Paul C. Rufien, Derek G. Passarelli, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge DAILEY.

In this contract dispute, plaintiff, Interbank Investments, LLC, appeals the trial court's dismissal of its complaint against defendants, Vail Valley Consolidated Water District and Eagle River Water and Sanitation District. According to plaintiff, the trial court erred in finding that its claims were precluded by the statute of limitations and that it had not, in any event, proven damages with respect to its breach of contract claims.

Defendants cross-appeal the trial court's determinations that plaintiff had standing to sue; that there had not been a material breach of contract precluding recovery here; and that, under the circumstances, repudiation could not be presented as an affirmative defense.

We affirm in part, reverse in part, and remand with directions.

## I. Background

Plaintiff claims to be the successor in interest to a developer who in the 1970's agreed to construct two water distribution systems in Eagle County. Defendants are the successors in interest to the original water districts.

Under a 1978 agreement, the developer was to receive reimbursement for its costs of construction "promptly" after the district collected water tap fees from new developments. Under a 1979 agreement, the developer was to receive reimbursement "quarterly" from applicable tap fees. The developer, however, would be responsible for re-paying to the districts engineering and consultant fees under the 1978 Agreement and engineering, consulting, and legal fees under the 1979 Agreement. No reimbursement was due the developer until after the water districts recouped their engineering, consulting, and legal expenses.

Construction of the water systems was completed in the early 1980's and by 1984 the water districts listed the water distribution systems and facilities as assets in their financial statements. Although the districts began collecting tap fees in 1980, none of the fees has ever been paid to the developer or its successors in interest. The districts, however, had recouped their expenses by October 1990 for the 1978 Agreement and by May 1992 for the 1979 Agreement.

On November 1, 1996, plaintiff initiated this action for breach of contract and unjust enrichment against defendants. After a trial to the court, the trial court found: (1) plaintiff had failed to prove its contract damages, because it had provided no documentary evidence from which contract damages could reliably be determined; (2) the doctrine of unjust enrichment "may apply"; and (3) unjust enrichment awards of $123,816.26 and $110,635.54 "might be" appropriate in connection with the 1978 and 1979 agreements, respectively.

Ultimately, however, the trial court dismissed plaintiff's claims on statute of limitations grounds.

The trial court concluded that plaintiff's causes of action accrued on July 31, 1984, when the water districts alerted the developer via letter that they would not perform their part of the contract unless certain documentation was provided (which was not) by August 15, 1984. Applying a then applicable six-year contract limitations period, the court determined that plaintiff's causes of action became barred on August 1, 1990. *See* § 13–80–110(1)(a), C.R.S.1973.

Alternatively, the court ruled that, even if the plaintiff's claims did not accrue until tap fees first became available for construction cost reimbursement in October 1990 and May 1992, the claims were still precluded by the then applicable three year contract limitations period. *See* § 13–80–101(1)(a), C.R.S. 2000.

## II. Plaintiff's Standing

■ Defendants contend that plaintiff has no standing to sue with respect to the 1978 and 1979 agreements, because plaintiff is not in fact a successor in interest to the developer. According to defendants, plaintiff was not properly assigned successor rights under the agreements. We disagree.

The agreements between the developer and the water districts expressly required

the water districts' consent to any assignments. Because the water districts or defendants never consented to any assignments, defendants argue that the plaintiff is not a valid party in interest.

■ "Under the law of assignments . . . the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable." *Farmers Acceptance Corp. v. DeLozier*, 178 Colo. 291, 294, 496 P.2d 1016, 1017 (1972).

Defendants argue that this rule is not applicable here because the developer had continuing obligations for any non-performance on its part. The agreements, however, provided only a one-year warranty on the water systems and the developer was under no contractual obligation to remedy problems with the systems beyond that date. Further, the developer explicitly assigned only the rights to receive payment, and not any of its obligations under the contract, to its successors in interest, including plaintiff. Hence, defendants' lack of consent to the assignment of rights to receive payment does not deprive plaintiff of standing to sue.

### III. Statute of Limitations

Plaintiff asserts that the trial court erred in determining that its claims were time barred. Specifically, plaintiff contends that its claims could not have accrued until after the water districts received sufficient tap fees to recoup their expenses and that the court applied the incorrect limitations period. We agree.

### A. Date Cause of Action Accrued

■ Plaintiff argues that the trial court erred in determining that its claim accrued on July 31, 1984 rather than in October 1990 and May 1992 when the water districts were first under an obligation to pay tap fees to the developer or its successor in interest. We agree.

"A cause of action for debt, obligation, money owed, or performance shall be considered to accrue on the date such debt, obligation, money owed, or performance becomes due." Section 13–80–108(4), C.R.S.2000. Under this statute, plaintiff's cause of action accrued as of the times in 1990 and 1992 when the tap fees first became available for reimbursement of the developer's construction costs.

Defendants, in effect, seek an exemption from the statute, claiming that plaintiff's causes of action accrued at or around July 31, 1984, when the water districts by letter purported to repudiate the agreements because of the developer's failure to provide certain documentation as required under the contracts. In their cross-appeal, defendants claim that the developer's failure to then provide this documentation constituted a material breach of the contract and that defendants had sufficient grounds for terminating the contract.

Under the contracts, the developer was to provide the water districts with: (1) bills of sale conveying the facilities and equipment constituting the water systems; (2) conveyances of easements required for the water system; (3) final as-built drawings of the water system facilities; and (4) invoices and other cost documentation verified by the water districts' engineer.

The developer responded by providing a bill of sale with respect to one of the two water systems. The remaining documentation was, however, not provided by August 15, 1984, as demanded by the water districts.

Nevertheless, the trial court found that the required easements were generally acceptable even though not every easement was twenty feet wide as required by the agreements and that the developer's building blueprints, which had been provided to the water districts, fulfilled the function of as-built drawings, except as they related to certain lines that had to be relocated after initial construction.

The trial court found that the developer had breached the contracts but not in a material way.

■ Whether there has been a material breach of contract turns upon the importance or seriousness of the breach and the likelihood that the injured party nonetheless received, or will receive, substantial performance under the contract.

■ Indeed, a breach that is material "goes to the root of the matter or essence of the contract," 6 W. Jaeger, *Williston on Contracts* § 842 at 165 (3d ed.1962); *see also Gibson v. City of Cranston,* 37 F.3d 731 (1st Cir.1994), and renders substantial performance under the contract impossible. *See J. Calamari & J. Perillo, Contracts* § 11–18 at 461–62 (3d ed. 1987)("Substantial performance is the antithesis of material breach. If it [is] determined that a breach is material, it follows that substantial performance has not been rendered."). *See also Reynolds v. Armstead,* 166 Colo. 372, 443 P.2d 990 (1968).

■ In deciding whether a breach is material, the extent to which an injured party would still obtain substantial benefit from the contract, and the adequacy of compensation in damages for the breach, should be considered. *Kaiser v. Market Square Discount Liquors, Inc.,* 992 P.2d 636 (Colo.App. 1999). The importance or materiality of contract terms must be assessed in context and in light of the expectations of the parties at the time the original contract was formed. *Phoenix Power Partners, L.P. v. Colorado Public Utilities Commission,* 952 P.2d 359 (Colo.1998).

■ Finally, whether a breach of contract is material is a question of fact. *Kaiser v. Market Square Discount Liquors, Inc., supra.* Hence, we may disturb the trial court's finding here only if it is clearly erroneous and not supported by the record. *See R.A.S. Builders, Inc. v. Euclid & Commonwealth Associates,* 965 P.2d 1242 (Colo.1998).

■ The trial court found, with adequate record support, that the developer's breach in failing promptly to turn over the required documentation was nonmaterial. The developer had performed the essence of the agreements, *i.e.,* building the water systems and turning them over to the water districts to operate. While the non-production of bills of sale, easement conveyances, and as-built drawings in 1984 was not wholly insignificant, this did not obstruct the water districts' use of the water systems. Most of the documentation, or its equivalent, was ultimately provided to the water districts, and the water districts failed to show how they were damaged therefrom. Similarly, the developer's failure to produce cost documentation did not interfere with the water districts' use and enjoyment of the water systems; if anything, it was harmful to the developer and its successors in interest, not to the water districts and their successors in interest.

The breach, quite simply, did not deprive the water districts of the benefit of their bargains. *See Mobil Oil Exploration & Producing Southeast, Inc. v. United States,* 530 U.S. 604, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000).

■ Because the developer did not materially breach the agreements, it follows that defendants were not justified in attempting to terminate or repudiate the agreements in July 1984. When, therefore, defendants repudiated the contract before their time for performance had arrived, the developer could respond by terminating the contract, urging retraction of the repudiation, or ignoring the repudiation and awaiting time for performance. 2 E. Farnsworth, *Farnsworth on Contracts* § 8.22 at 480 (1990).

Here, the developer, having already built the water systems, chose to ignore the repudiation. Consequently, the contracts would not be considered actually breached until the time performance was due, *i.e.,* October 1990 and May 1992, and the statute of limitations would not begin to run until that time. *Id.* *See also* 4 A. Corbin, *Corbin on Contracts* § 989 at 967 (1951)("The plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately.").

### B. Applicable Limitations Period

■ Plaintiff contends that the trial court should not have applied the generic, three-year contract limitations period for causes of actions accruing in 1990 and 1992, but rather should have applied the more specific, six-year limitations period for actions "to recover a liquidated debt or unliquidated, determinable amount of money due ...." set out in § 13–80–103.5(1)(a), C.R.S.2000. We agree.

■ Initially, we note that plaintiff's unjust enrichment claims, being equitable in nature, *see Salzman v. Bachrach,* 996 P.2d

1263 (Colo.2000), are technically subject to an equitable laches rather than a legal statute of limitations analysis. Absent extraordinary circumstances, however, a court " 'will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character.' " *Brooks v. Bank of Boulder,* 911 F.Supp. 470, 477 (D.Colo.1996)(quoting *Shell v. Strong,* 151 F.2d 909 (10th Cir.1945)). Hence, because plaintiff did not present any evidence of extraordinary circumstances, we, like the trial court, will apply the statute of limitations analysis applicable to plaintiff's contract claims to the laches analysis applicable to the unjust enrichment claims.

Whether the breach of contract claims are governed by the contract or the debt limitations period depends upon whether defendants' obligation to plaintiff qualifies as either "a liquidated debt or unliquidated, determinable amount of money due" for purposes of § 13–80–103.5(1)(a). If it does, then the six-year debt limitations period applies; if it does not, then the three-year contract limitations period applies. We conclude that the six-year debt limitations period is applicable here.

▪ In *Rotenberg v. Richards,* 899 P.2d 365 (Colo.App.1995), a division of this court found that an amount is either liquidated or determinable for purposes of § 13–80–103.5(1)(a) if an agreement sets forth a method for determining the amount due, regardless of the need to refer to facts external to the agreement. There, the court held that the statute applied to an action to enforce a retainer agreement expressly providing for payment of $100 per hour for legal services, despite the need for external evidence to establish the number of hours worked.

Similarly, a claim under an employment contract was held to be "determinable" where, despite a dispute over the number of hours worked by an individual, the amount due was easily calculable. *Fishburn v. City of Colorado Springs,* 919 P.2d 847 (Colo.App. 1995). Also, an amount owed under a building contract was held to be "determinable" where the amount was a specified percentage of the estimated cost of construction, despite the parties' dispute over the estimated cost. *Comfort Homes, Inc. v. Peterson,* 37 Colo. App. 516, 549 P.2d 1087 (1976).

Here, the method for determining the amount due to the plaintiff was set forth in the agreements. The 1978 agreement stated that direct costs, demonstrated by invoices and verified by that water district's engineer, would be eligible for reimbursement. The 1979 agreement specified that "actual costs expended ... in connection with the requirements of the Agreement" would be reimbursed.

The nature of the defendants' obligation is money owed, and the terms of each agreement contain the provisions for determining the amount owed. Therefore, while the defendants may contest what the "direct" or "actual" costs are, the agreements provide that those costs are the amount of debt owed to the plaintiff. In our view, this makes the debt sufficiently "determinable" for purposes of invoking § 13–80–103.5(1)(a) as the applicable statute of limitations provision.

### C. Application to Facts

▪ Plaintiff filed its breach of contract and unjust enrichment claims on the 1978 agreement in November 1996, more than six years after they first accrued in October 1990. Thus, normally both claims would then be barred by the applicable limitations period. However, "if a money obligation is payable in installments, a separate cause of action arises on each installment and the statute of limitations begins to run against each installment when it becomes due." *In re Church,* 833 P.2d 813, 814 (Colo. App.1992).

▪ Here, plaintiff was not entitled to recovery of the entire amount due it under the 1978 agreement in October 1990. Rather, plaintiff was entitled to compensation, bit by bit, as tap fees were collected. All but one of the scheduled tap fees payable to plaintiff under the 1978 agreement fell within the applicable limitations period because they were recovered after October 1990. Consequently, most of plaintiff's contract claim survived the statute of limitations. So too did plaintiff's unjust enrichment claim. To hold otherwise would result in a virtual forfeiture of plaintiff's interests, and "equity abhors [a] forfeiture." *Grombone v. Krekel,* 754 P.2d 777, 779 (Colo.App.1988).

Plaintiff's breach of contract and unjust enrichment claims on the 1979 agreement were timely filed because those claims first accrued only in May 1992, and plaintiff's lawsuit was filed within six years thereof.

### IV. Plaintiff's Failure to Prove Contract Damages

Plaintiff contends that the trial court also erred in finding that it had failed to prove its contract damages under the 1978 and 1979 agreements. We disagree.

The amount of damages awarded for a breach of contract cannot be based on speculation or conjecture; rather, it must be established with reasonable certainty by a preponderance of the evidence. *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378 (Colo.1993); *see also Kaiser v. Market Square Discount Liquors, Inc., supra.* If the amount of loss is not satisfactorily proved, a small sum fixed without regard to the actual amount of loss will be awarded as nominal damages. *General Insurance Co. v. City of Colorado Springs*, 638 P.2d 752 (Colo.1981); *Doyle v. McBee*, 161 Colo. 130, 420 P.2d 247 (1966).

As fact finder, the trial court has the sole prerogative for fixing the amount of damages, and its award will not be set aside unless it is manifestly and clearly erroneous. *Kincaid v. Western Operating Co.*, 890 P.2d 249 (Colo.App.1994).

Here, the trial court found that plaintiff failed to prove the amount of its damages by a preponderance of the evidence. The trial court noted that: (1) plaintiff attempted to prove its damages through summarized final draw requests, some bills, and unexplained apportionments of purported tank and engineering costs; (2) plaintiff had not complied with the contractual requirement to provide precise construction documents and invoices with respect to the two agreements; (3) no documents succinctly stated plaintiff's claims; (4) no invoices were supplied from which the court could reliably determine the costs incurred; and (5) the proof at trial did not support a calculation of an amount of actual damages.

Because the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions drawn from it, were within the province of the trial court, *see generally Goluba v. Griffith*, 830 P.2d 1090 (Colo.App.1991), we can not disturb its determination here. Consequently, we uphold the trial court's ruling and conclude that plaintiff is entitled only to nominal damage awards on its contract claims. *See General Insurance Co. v. City of Colorado Springs, supra.*

### V. Repudiation Defense

Finally, on cross-appeal, Defendants assert that the trial court erred in striking their affirmative defense of repudiation. We disagree.

Defendants claimed that their repudiation of the contract triggered the applicable statutory limitations period. Defendants did not, then, use repudiation as a separate defense, but as an ingredient of their statute of limitations defense. However, a "repudiation is a manifestation by one party to the other that the first cannot or will not perform at least some part of its obligations under the contract." 2 *E. Farnsworth, supra,* § 8.21 at 474. Repudiation does not in and of itself excuse a repudiator from performing its part of a contract; it allows an innocent non-repudiating party, if it so chooses, to terminate the contract without performing its part of the bargain. *See Durango Transportation, Inc. v. City of Durango*, 786 P.2d 428 (Colo.App.1989), *rev'd on other grounds*, 807 P.2d 1152 (Colo.1991); 2 *E. Farnsworth, supra,* § 8.21.

For these reasons, the trial court did not err in striking consideration of repudiation as an affirmative defense for defendants.

### VI. Disposition

We have concluded that plaintiff was not time-barred from instituting an action with respect to most of its breach of contract claim regarding the 1978 agreement, its breach of contract claim regarding the 1979 agreement, and its unjust enrichment claims regarding both agreements.

We have also concluded that any award with respect to plaintiff's contract claims could only be for nominal damages.

We do not, however, order entry of judgment on the contract claims. As noted earlier in this opinion, the trial court found that

the doctrine of unjust enrichment "may apply" and that unjust enrichment awards "might be" appropriate in connection with the 1978 and 1979 agreements. Given the tentative nature of these rulings, we are unable to determine whether plaintiff should recover restitution for unjust enrichment in lieu of the nominal damage awards. *See E.H. Boly & Son, Inc. v. Schneider,* 525 F.2d 20, 23 (9th Cir.1975)(n.3) ("while damages and restitution cannot be requested concurrently in a complaint, a plaintiff may claim these as alternatives, leaving the ultimate election for the court").

Consequently, on remand, the trial court must determine whether plaintiff is entitled to recover restitution for unjust enrichment and, if so, in what amount. Only then can the trial court fashion an appropriate judgment in this case.

Accordingly, those parts of the trial court's judgment recognizing plaintiff's right to sue; determining that no material breach precluded recovery; holding that repudiation could not be an affirmative defense here; and finding that damages for the contract claims were not proven, are affirmed. That portion of the judgment in which the trial court concluded that plaintiff's claims were time-barred is reversed, and the cause is remanded for further proceedings on plaintiff's unjust enrichment claims.

Judge PLANK and Judge PIERCE * concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.