COLORADO COURT OF APPEALS                                    **2016COA116**

Court of Appeals No. 15CA0485
City and County of Denver District Court No. 14CV34290
Honorable Herbert L. Stern, III, Judge

Francis Ybarra,

Plaintiff-Appellant,

v.

Greenberg & Sada, P.C., a Colorado corporation,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BERGER
Román and Bernard, JJ., concur

Announced August 11, 2016

Vedra Wali LLC, Daniel Vedra, Ahson Wali, Denver, Colorado, for Plaintiff-Appellant

Greenberg & Sada, P.C., Alan Greenberg, Englewood, Colorado, for Defendant-Appellee

Murr Siler & Accomazzo, P.C., Jamie G. Siler, James Eckels, Kimberly L. Martinez, Denver, Colorado, for Amicus Curiae Colorado Creditor Bar Association

Cynthia H. Coffman, Attorney General, Nikolai N. Frant, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Administrator of the Uniform Consumer Credit Code

¶ 1     This case presents the novel question whether the Colorado Fair Debt Collection Practices Act (CFDCPA), sections 12-14-101 to -137, C.R.S. 2015, applies to a subrogation claim for damages arising from a tortious act.  The answer turns on whether a subrogation claim constitutes a "debt" as defined in the CFDCPA. We conclude that a subrogation claim is not a "debt" under the CFDCPA and therefore affirm the district court's judgment dismissing the complaint of plaintiff, Francis Ybarra.

## I. Relevant Facts and Procedural History

¶ 2     Ybarra drove her car into a parked car insured by State Farm Auto Insurance Company (State Farm).  Ybarra was uninsured. State Farm paid its insured for the damages to the vehicle, and thus it became a subrogee, both by the terms of the State Farm insurance policy and Colorado common law, of the insured's negligence claim against Ybarra.  *Bainbridge, Inc. v. Travelers Cas. Co. of Conn.*, 159 P.3d 748, 751 (Colo. App. 2006) (discussing common law subrogation).

¶ 3     State Farm, in its capacity as subrogee, hired defendant, the law firm of Greenberg & Sada, P.C. (law firm), to sue Ybarra for

negligence. When Ybarra did not respond to State Farm's complaint, a default judgment was entered against her.

¶ 4 In a separate suit, which is the subject of this appeal, Ybarra sued the law firm, alleging that it violated the CFDCPA's venue provisions as well as prohibitions against making false representations and using deceptive means to collect a debt when it obtained judgment against her. §§ 12-14-107(1)(b)(I), (1)(k), -111(1)(b), C.R.S. 2015. The law firm moved to dismiss Ybarra's claim for failure to state a claim under C.R.C.P. 12(b)(5), asserting that a subrogation claim was not a "debt" subject to the CFDCPA.

¶ 5 The district court granted the law firm's motion, holding that "the Act only applies to consensual consumer transactions, not [to] judgments arising from negligence claims." Ybarra appeals the court's dismissal of her complaint, arguing that the CFDCPA applies to subrogation claims arising from a tort.

## II. Standard of Review

¶ 6 We review de novo the district court's grant of a motion to dismiss. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004); *Fry v. Lee*, 2013 COA 100, ¶ 17. In reviewing a motion to dismiss, we accept all matters of material fact in the complaint as

true and view the allegations in the light most favorable to the plaintiff. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000). Even so, a complaint must "state a claim for relief that is plausible on its face." *Warne v. Hall*, 2016 CO 50, ¶¶ 1-2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1]

### III. The Meaning of "Debt" Under the CFDCPA

¶ 7 Ybarra argues that the district court misinterpreted the CFDCPA in dismissing her claim. We disagree.

¶ 8 Statutory interpretation is a question of law which we review de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010). In interpreting a statute, our primary goals are to discern and give effect to the General Assembly's intent. *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15. We look first to the statutory language, giving words and phrases their plain and ordinary meanings according to the rules of grammar and common usage. § 2-4-101, C.R.S. 2015. We read the language in the dual contexts

---

[1] *Warne v. Hall*, 2016 CO 50, was decided after the district court dismissed Ybarra's complaint. Because the standard for dismissal under C.R.C.P. 12(b)(5), as established in *Warne*, is now the law, we must apply it. However, the question presented in this case is the purely legal question whether a subrogation claim is a "debt" within the meaning of the CFDCPA. Thus, the change in the law effected by *Warne* does not affect the result of this case.

of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of the statute's language. *Krol*, ¶ 15. If the statutory language is susceptible of more than one reasonable interpretation, it is ambiguous, and only then will we apply interpretive aids to ascertain the General Assembly's intent. *Vanderborgh v. Krauth*, 2016 COA 27, ¶ 9.

¶ 9 The CFDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment." § 12-14-103(6)(a), C.R.S. 2015. The CFDCPA does not define the word "transaction." Therefore, we must determine the meaning of the word "transaction." But if Ybarra's obligation to pay money to State Farm did not arise from a "transaction," it is not a "debt" subject to the CFDCPA.

¶ 10 To determine the meaning of "transaction," we may consult definitions contained in recognized dictionaries. *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1068 (Colo. 1994). Black's Law Dictionary offers four definitions of the word "transaction":

> 1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract.
> 2. Something performed or carried out; a business agreement or exchange.
> 3. Any activity involving two or more persons.
> 4. . . . An agreement that is intended by the parties to prevent or end a dispute and in which they make reciprocal concessions.

Black's Law Dictionary 1726 (10th ed. 2014).

¶ 11 Ybarra asserts five arguments to support her contention that a car accident is a "transaction" under the CFDCPA, and that therefore her alleged obligation to pay State Farm is a "debt" within the meaning of the CFDCPA.

### A. Remedial Statutes Should Be Construed Broadly

¶ 12 Ybarra first argues that the General Assembly intended courts to apply the third (and most expansive) definition of "transaction" in Black's Law Dictionary: "[a]ny activity involving two or more persons." She points out that courts interpreting the CFDCPA's federal counterpart, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (2012), have held that it should "be construed liberally in favor of the consumer" to effectuate the FDCPA's purpose of protecting consumers from harassing and abusive debt collection practices. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th

5

Cir. 2002). Because the CFDCPA is based on the FDCPA, Ybarra claims that the General Assembly intended for the CFDCPA to apply to negligence judgments arising from car accidents. *See Udis v. Universal Commc'ns Co.*, 56 P.3d 1177, 1180 (Colo. App. 2002) (noting that the CFDCPA is based on the FDCPA).

¶ 13 Following authority from another division of this court and federal cases, we reject this argument. We find the reasoning in *Rector v. City & County of Denver*, 122 P.3d 1010 (Colo. App. 2005), and the Eleventh Circuit's decision in *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998), persuasive. *See also Turner v. Cook*, 362 F.3d 1219, 1228 (9th Cir. 2004) (following *Hawthorne*).

¶ 14 A variation of the question before us was addressed in *Rector*. The issue in that case was whether late fees assessed for parking meter violations constituted "debt" under the CFDCPA. *Rector*, 122 P.3d at 1016. In deciding that question, the division addressed whether parking meter fees arise out of a "transaction." The division concluded that they did not because regulation of metered parking is an exercise of Denver's police power, as opposed to a rendition of a service to consumers, and is therefore outside the

6

scope of a consumer transaction. *Id.* The division relied on *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980), which, in interpreting the FDCPA, held that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value."

¶ 15     We agree with *Rector*'s interpretation of the word "transaction." Though, as Ybarra correctly argues, Black's Law Dictionary offers one very broad alternative definition of the word "transaction," the word's primary definition is much more limited: "[t]he act or an instance of conducting business or other dealings." Black's Law Dictionary 1726 (10th ed. 2014). Under Ybarra's construction of "transaction," *any* obligation to pay another would be covered by the CFDCPA. But, had the legislature intended that the statute apply to *any* obligation to pay another, it would not have limited the definition of "debt" to those obligations "arising out of a transaction." § 12-14-103(6)(a); *Denver Publ'g. Co. v. Bd. of Cty. Comm'rs*, 121 P.3d 190, 195 (Colo. 2005) (when construing statutory language, the appellate court interprets every word, rendering none superfluous).

¶ 16     The fact that an undefined word in a statute has more than one dictionary definition does not necessarily render either the word or the statute ambiguous.  A division of this court has rejected that precise argument, and so do we.  *Stoesz v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 86, ¶¶ 14-16; *see also Miss. Poultry Ass'n v. Madigan*, 31 F.3d 293, 307 (5th Cir. 1994).  As we concluded above, the plain language (and context) of the CFDCPA precludes equating a "transaction" with "any activity involving two or more persons."  Thus we are left with only one reasonable interpretation of the word "transaction," which requires some kind of business dealing.  *Rector*, 122 P.3d at 1016.

¶ 17     Ybarra argues that *Rector* is factually distinguishable from this case.  That is true.  But *Rector* did address, correctly in our view, the meaning of the word "transaction" in the CFDCPA, and that analysis strongly supports the district court's conclusion that a subrogation claim is not a "debt" within the meaning of the CFDCPA.

¶ 18     Moreover, if the General Assembly disagreed with *Rector*'s interpretation of the word "transaction" under the CFDCPA, it has had eleven years to countermand that interpretation by legislative

amendment. *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 360 (Colo. 2003) ("[I]f the legislature disapproves of our interpretation, it has the power to amend the statute to make its intention clear."). The fact that the General Assembly has not disturbed *Rector*'s holding should, and does, give us pause to decide the meaning of "transaction" differently from the way it was decided in *Rector*.

¶ 19    The Eleventh Circuit's interpretation of "debt" under the FDCPA in *Hawthorne* further supports our conclusion. In that case, the Eleventh Circuit considered almost exactly the question now before us: whether a subrogation claim arising from a tort was a "debt" under the FDCPA. Relying on Webster's New Collegiate Dictionary (1979) and Webster's New World Dictionary (2d ed. 1986), the court concluded that "[t]he ordinary meaning of 'transaction' necessarily implies some type of business dealing between parties." *Hawthorne*, 140 F.3d at 1371. Thus, "transactions" do not include "damage obligations thrust upon one as a result of no more than her own negligence." *Id.* We think that *Hawthorne* was correctly decided and we apply it here.

¶ 20    We also reject Ybarra's argument that any reliance on

*Hawthorne* is misplaced because that case interpreted the FDCPA,

which has a different definition of "debt" from that in the CFDCPA.

Under the FDCPA, a "debt" is "any obligation or alleged obligation of

a consumer to pay money arising out of a transaction *in which the*

*money, property, insurance, or services which are the subject of the*

*transaction are primarily for personal, family, or household purposes*,

whether or not such obligation has been reduced to judgment."

15 U.S.C. § 1692a(5) (emphasis added).

¶ 21    We acknowledge that the state and federal definitions of "debt"

are not identical.  Still, we conclude that those differences do not

negate the applicability of *Hawthorne*'s holding that not all

obligations to pay money are "debts."  Under the FDCPA, only

personal, family, or household debts are covered, while the

CFDCPA's definition of "debt" does not contain this limitation.  But

this difference only limits the FDCPA's applicability to debts arising

from *certain types* of transactions.  It does not displace the

requirement, contained in both the federal and Colorado statutes,

that the debt must arise from a "transaction."

¶ 22    Because a car accident can only be considered a "transaction" under a strained interpretation of the CFDCPA, we conclude that a subrogation claim arising from a car accident is not a "debt" under the CFDCPA. *Indian Mountain Metro. Recreation & Park Dist. v. J.P. Campbell & Assoc.*, 921 P.2d 65, 67 (Colo. App. 1996) ("if the language of the statute is plain, its meaning clear, and no absurdity results, no strained interpretation should be adopted.").

## B. Consensual Transaction

¶ 23    Ybarra next contends that the district court erred in holding that a debt must arise from a "consensual" transaction to be covered under the CFDCPA. We need not consider this argument because we have held, above, that a subrogation claim arising from tortious activity is not a "transaction" within the meaning of the CFDCPA. Thus, it is unnecessary to decide in this case whether the transaction must be consensual.

## C. Subrogation of Rights Itself is a "Transaction"

¶ 24    Ybarra next argues that the act of subrogating rights *itself* is the transaction from which the debt arose. She asserts that her liability to State Farm only arose once State Farm stepped into the shoes of its insured "to protect [its] bottom line."

11

¶ 25    We reject this argument because it is undisputed that absent the car accident, Ybarra would have had no obligation to pay the insured or State Farm.  Furthermore, even if the subrogation claim was a "transaction," that transaction was between the insured and the insurer, not one between the Ybarra and the insured.

¶ 26    Ybarra has not cited, and we have not found, any section of the CFDCPA or any other authority which supports a conclusion that the subrogation of rights itself somehow triggers application of the CFDCPA when the underlying event is not itself a transaction, and we decline to read additional terms into or modify the statute's plain language.  *Dubois v. Abrahamson*, 214 P.3d 586, 588 (Colo. App. 2009).[2]

## D. Deference to Agency Advisory Opinion

¶ 27    Ybarra further contends that we should, and the district court failed to, defer to the advisory opinion of the Colorado Collection Agency Board (Board) which concludes that "insurance subrogation claims are 'debt' within the meaning of [the CFDCPA]."

---

[2] We do not exclude the possibility that under different circumstances than those presented here, a subrogation claim could constitute a "debt" under the CFDCPA.

¶ 28    "[W]e must give deference to the reasonable interpretations of the administrative agencies that are authorized to administer and enforce the law." *Tivolino Teller House, Inc. v. Fagan*, 926 P.2d 1208, 1211 (Colo. 1996). Such deference, however, is not warranted when the agency's interpretation is contrary to the plain meaning of the statute. *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7.

¶ 29    The parties dispute whether the Board qualifies as an administrative agency deserving of deference for its interpretations of the CFDCPA and whether the advisory opinion is the type of agency action that is entitled to deference. But we need not decide those questions because even if the Board's decision was entitled to deference, we conclude that its interpretation that subrogation claims are debts is not supported by the plain language of the CFDCPA.

¶ 30    Relying on various dictionary definitions, the Board's advisory opinion concludes that because "transaction" is a "broad term," it includes torts out of which a subrogation claim arises. In so concluding, the opinion rejected the applicability of *Hawthorne* because "[u]nlike the FDCPA, there is nothing in the Act's definition

of 'debt' that requires that the 'transaction' involve a contractual or consensual arrangement or the purchase or use of goods or services."

¶ 31    But, as we concluded above, the ordinary meaning of "transaction" does require "some type of business dealing between parties." *Hawthorne*, 140 F.3d at 1371. While a court should give deference to the agency entrusted by law to enforce a statute, the court must, in the end, make its own determination of the legal meaning of a statute. *Colo. Mining Ass'n v. Bd. of Cty. Comm'rs*, 199 P.3d 718, 731 (Colo. 2009); *Williams v. Kunau*, 147 P.3d 33, 36 (Colo. 2006).

¶ 32    For the reasons articulated above, we conclude that the Board's opinion incorrectly determined the meaning of "debt" in the CFDCPA and we reject it.

### E. Legislative History

¶ 33    Ybarra next asserts that the legislative history of the CFDCPA demands that the term "debt" be interpreted broadly enough to cover obligations arising from car accidents. While the legislative history of a statute may illuminate ambiguous text, it is improper to

14

allow legislative history "to muddy clear statutory language." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011).

¶ 34     Because we conclude that the Act, by its language, clearly and unambiguously does not apply to the type of subrogation claim at issue here, we do not address Ybarra's legislative history argument.

## IV. District Court's Citation of an Irrelevant Statute

¶ 35     Lastly, Ybarra contends that the district court erred because it relied on an irrelevant statute in holding that the CFDCPA does not apply to judgments arising from negligence claims.

¶ 36     In its dismissal order, the district court cited the definition of "collection agency" under the CFDCPA: "'Collection agency' does not include . . . [a]ny person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt[.]"  § 12-14-103(2)(b)(IV).

¶ 37     Ybarra argues that the court erred in concluding, based on this definition, that persons attempting to collect judgments are exempt under the statute.  She asserts that the definition of "collection agency" merely exempts process servers and is not a blanket exemption for judgments arising from negligence claims.

¶ 38    We agree with Ybarra that subsection 103(2)(b)(IV) did not exempt the law firm from application of the CFDCPA.  But it is not clear that the district court relied on the definition of "collection agency" in granting the motion to dismiss.  Instead, it appears that the court relied on *Rector* and *Hawthorne* to conclude that the CFDCPA applies only to consensual consumer transactions, and not judgments arising from negligence claims.  But even if the court erroneously relied on that subsection of the statute in reaching its decision, its reliance was immaterial in view of our analysis and disposition.

V. Conclusion

¶ 39    We hold that a subrogation claim arising from tortious activity is not a "debt" under the CFDCPA and therefore affirm the district court's judgment dismissing Ybarra's complaint.

JUDGE ROMÁN and JUDGE BERNARD concur.

16