24CA2120 Hooks v Myers 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2120
Bent County District Court No. 23CV30012
Honorable Samuel Scott Vigil, Judge

---

Anthony Hooks III and Leigh Ann Hooks,

Plaintiffs-Appellees,

v.

Everett M. Myers,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HAWTHORNE*
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Randa Davis-Tice, Lamar, Colorado, for Plaintiffs-Appellees

Everett M. Myers, Pro Se


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 Defendant, Everett M. Myers, appeals the district court's judgment partially in his favor and partially in favor of plaintiffs, Anthony Hooks III and Leigh Ann Hooks (the Hookses). We affirm.

I. Background

¶ 2 In 2017, Myers and the Hookses entered into a "Contract for the Sale of Real and Personal Property." The real and personal property consisted of a furnished house and approximately 165 acres of land in Bent County, Colorado. Under the contract, the Hookses agreed to pay a down payment of $5,000 and $1,000 a month for a total of $200,000. The Hookses were also responsible for the annual cost of insurance, irrigation water, and taxes. The contract specified that Myers would "maintain insurance coverage on the house" but the Hookses "may use an insurance company of [their] own choosing as long as the coverage remains the same (full replacement costs) and said policy is in the name of [Myers]." The contract stated that the home "was fully furnished and [the Hookses] may have full use of any and all personal items," but "[i]f [the Hookses] do not wish to use these items they need to inform [Myers] so that he (Seller) may dispose of these items." The contract also contained a clause stating that, "[i]n case of destruction of over

1

[fifty percent] of the house, insurance proceeds will go to [Myers] for liquidation of amount owed on this contract for sale" (the destruction clause).

¶ 3    The contract provided that, if the Hookses performed all the covenants and made all payments, Myers would convey the property to them, in fee simple, by warranty deed.

¶ 4    In 2022, a fire damaged the property, and the Hookses submitted an insurance claim. It is undisputed that the Hookses had obtained an insurance policy listing themselves as the policy holders and Myers as the first mortgagee. In February 2023, the insurance company agreed to pay a cash value settlement of $136,901.74 to the Hookses, but Myers asserted that he was entitled to the full amount of the insurance proceeds. Because of the dispute, the insurance proceeds were not released to either party.

¶ 5    In December 2023, the Hookses filed a complaint requesting a declaratory judgment as to the rights and duties under the contract and regarding the insurance proceeds. The Hookses asked the district court to determine that Myers was only entitled to a portion of the insurance proceeds to cover the remaining amount owed on

2

the contract, approximately $103,000 at the time the suit was filed. The Hookses also asked that the court order Myers to convey the property to them once full payment was made.[1]

¶ 6     Myers counterclaimed, alleging breach of contract and bad faith, and requested liquidated and exemplary damages. He asserted that the Hookses breached the contract by failing to (1) list him as the insured on the insurance policy and (2) notify him regarding his personal property. Myers also argued that the parties should be released from the contract, that he was entitled to all of the insurance proceeds under the destruction clause, and that he was entitled to $50,000 in damages based on the breach related to his personal property.

¶ 7     After a bench trial and written closing arguments, the court determined that (1) the destruction clause unambiguously entitled Myers to the remaining amount owed on the contract, not the full amount of insurance proceeds; (2) the clause was triggered because over fifty percent of the house was destroyed and the Hookses were

---

[1] It was undisputed that the Hookses had made all required monthly payments and were continuing to make monthly payments while the suit was ongoing.

required to pay Myers the "amount currently remaining due on the installment land contract"; (3) the Hookses breached the contract by failing to designate Myers as the insured on the policy, but he was only entitled to nominal damages; and (4) the Hookses breached the contract by failing to notify Myers that they did not want some of his personal property, but Myers was only entitled to nominal damages.[2]  Lastly, the court ordered that any other claims or counterclaims that were not addressed were considered abandoned.

## II.    Standard of Review

¶ 8    The interpretation of a contract, and whether there is a breach, is a legal question that we review de novo.  *French v. Centura Health Corp.*, 2022 CO 20, ¶ 24.

¶ 9    We construe pro se appellate briefs broadly, focusing on their substance rather than their form.  *See Jones v. Williams*, 2019 CO

---

[2] The district court also concluded that (1) the Hookses were not entitled to interest on the insurance proceeds; (2) Myers was not entitled to exemplary damages; and (3) there was no prevailing party.  It ordered each party to bear their own attorney fees and costs.  Because neither party raises an argument on appeal regarding these rulings, we consider them abandoned.  *See Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 38 (arguments raised in the trial court and not pursued on appeal are deemed abandoned).

61, ¶ 5.  But it is not our role to rewrite a pro se appellant's briefs or to act as their advocate.  *Johnson v. McGrath*, 2024 COA 5, ¶ 10.

### III.    Analysis

¶ 10    As best we can discern, Myers contends that the district court erred by (1) concluding that the destruction clause was unambiguous or, alternatively, by interpreting an unambiguous contract contrary to the parties' mutual understanding and creating ambiguity; (2) concluding that the Hookses did not materially breach the contract; (3) labelling the contract as a "land installment contract"; (4) treating his unjust enrichment claim as abandoned; (5) allowing the Hookses to raise a new argument after trial; and (6) treating him unequally from the Hookses.  We perceive no error.

### A.    Ambiguity

¶ 11    Myers contends that the district court erred by concluding that the contract's destruction clause was unambiguous or, alternatively, that the court's interpretation conflicted with the parties' mutual understanding and created ambiguity.  We are not persuaded.

### 1.    The Contract Is Not Ambiguous

¶ 12    Myers contends that the contract is ambiguous (1) based on the district court's order denying his motion for summary judgment and (2) because the destruction clause language is subject to multiple interpretations.  We disagree.

#### a.    Denial of Summary Judgment

¶ 13    The denial of a motion for summary judgment is not reviewable on appeal as it is not a final order.  *CadleRock Joint Venture LP v. Esperanza Architecture & Consulting, Inc.*, 2021 COA 119, ¶ 28.  To preserve an issue raised in a denied motion for summary judgment, a party must raise the issue in a motion addressed to the verdict, such as a motion for directed verdict or judgment notwithstanding the verdict.  *See Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1249 (Colo. 1996).

¶ 14    Because Myers failed to provide the trial transcript on appeal, we are unable to discern whether he re-raised any of the arguments he asserted in his denied motion for summary judgment.  *See* C.A.R. 10(d)(3) (Appellants "must include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal.").  So we decline to address his challenge to the court's

order denying his summary judgment motion. *Castillo v. Koppes-Conway*, 148 P.3d 289, 291-92 (Colo. App. 2006) (declining to review trial court's order due to appellant's failure to comply with appellate rules).

### b. Ambiguity

¶ 15 Myers next contends that the district court erroneously concluded that the destruction clause was unambiguous because (1) the term "liquidated" has multiple definitions and (2) the clause does not contain limiting language. He argues that, because the clause is ambiguous, extrinsic evidence should be considered. We are not persuaded.

¶ 16 Our primary goal in interpreting a contract is to give effect to the parties' intent, which is discerned primarily from the contract's language. *French*, ¶ 25. We first determine if the contract terms are ambiguous by examining the contract's language and affording the words their plain and ordinary meaning. *Id.* The language's plain meaning is "examined and construed in harmony" with reference to all parts of the contract. *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993). If the written contract is unambiguous, we enforce it as written. *French*, ¶ 25. If

the contract is ambiguous — that is, if the words are susceptible of more than one reasonable interpretation — extrinsic evidence is admissible to establish the parties' intent. *Id.* However, extrinsic expressions of intent cannot contradict the plain language or justify a different interpretation. *Fort Lyon Canal Co. v. High Plains A & M, LLC*, 167 P.3d 726, 729 (Colo. 2007).

¶ 17    The destruction clause states, "In case of destruction of over [fifty percent] of the house, insurance proceeds will go to [Myers] for liquidation of amount owed on this contract for sale." The court examined the plain and ordinary meanings of the word "liquidation" and concluded that it referred to "liquidation of the debt on the contract," which was limited to the remaining amount owed on the contract. The court also determined that the clause did not state "all insurance proceeds are to go to the seller," and it found that "[l]iquidation of the debt necessarily means payment of the remaining amount owed, not payment of the entirety of the insurance proceeds." The court concluded that the contract was not ambiguous and, upon full payment, Myers was required to convey title to the Hookses.

¶ 18    Although we are not bound by the court's interpretation, *see*

*Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo.

2000), we agree with its conclusion.  "Liquidation" is defined as

"[t]he act of determining by agreement or by litigation the exact

amount of something (as a debt or damages) that before was

uncertain"; "[t]he act of settling a debt by payment or other

satisfaction"; or "[t]he act or process of converting assets into cash,

esp. to settle debts."  Black's Law Dictionary 1114 (12th ed. 2024).

And the destruction clause explicitly states that the insurance

proceeds "go to" the "amount owed on this contract for sale."  Thus,

we agree with the district court and conclude that the contract's

plain language states that Myers is only entitled to the portion of

the insurance proceeds required to pay any remaining balance owed

on the contract.

¶ 19    But Myers asserts that "liquidated" has multiple dictionary

definitions, so it must be ambiguous.  True, "liquidated" has more

than one definition, but merely having multiple dictionary

definitions does not make a word ambiguous.  *Ybarra v. Greenberg*

*& Sada, P.C.*, 2016 COA 116, ¶ 16 ("The fact that an undefined

word in a statute has more than one dictionary definition does not

9

necessarily render either the word or the statute ambiguous."), *aff'd*, 2018 CO 81. In the context of the contract, *see id.* at ¶ 22, the only reasonable interpretation of the destruction clause is that "liquidation" refers to the act of settling the debt, which consists of the amount owed on the contract.

¶ 20    We are not persuaded otherwise by Myers' argument that the parties' intent cannot be discerned from the written contract absent specific language stating the clause was for "debt reduction only." Myers cites *Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247, 252 (Colo. 1983), and *McCoy v. People*, 2019 CO 44, ¶¶ 43-49, to support his argument. Neither case is applicable. In *Union Rural Electric Ass'n*, 661 P.2d at 251, the court did not address the absence of limiting language and instead discerned the parties' intent from the contract's language. And in *McCoy*, ¶ 44, the court examined an ambiguous criminal statute and legislative intent. Because Myers failed to develop his argument, we decline to address it further. *See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 35 (declining to address conclusory argument presented without authority); *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010)

(Appellate courts "will not consider a bald legal proposition presented without argument or development.").

¶ 21 Because the destruction clause is not ambiguous, we necessarily reject Myers' argument that we should look to extrinsic evidence to interpret the contract. *See Cheyenne*, 861 P.2d at 715 ("Only after a contract is deemed ambiguous may the trial court use extrinsic evidence to assist it in ascertaining the intent of the parties.").

### 2. District Court Did Not Create Ambiguity

¶ 22 Myers contends that the contract language is unambiguous and the parties understood the destruction clause as a liquated damages clause entitling him to all of the insurance proceeds. He argues that the district court's interpretation conflicted with that mutual understanding and created ambiguity. We are not persuaded for two reasons.

¶ 23 First, Myers does not explain how the destruction clause constitutes a liquidated damages provision. A liquidated damages provision identifies a stipulated amount of damages to be paid in the event of a breach. *See* Black's Law Dictionary 490 (12th ed. 2024) (defining "liquidated damages" as "[a]n amount contractually

11

stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches"); *Ravenstar, LLC v. One Ski Hill Place, LLC*, 2017 CO 83, ¶ 10 (explaining that a liquidated damages provision has three elements: (1) the parties' intention to liquidate damages; (2) the amount of liquidated damages is a reasonable estimate of actual damages resulting from a breach; and (3) actual damages resulting from a breach were difficult to determine as of the date of the contract). The destruction clause does not mention a breach, nor does it identify a stipulated amount to estimate reasonable damages in the event of a breach. The destruction clause is not a liquidated damages provision. *See Ravenstar*, ¶ 10. So, to the extent that Myers contends that he is entitled to "liquidated damages," we reject that argument.[3]

¶ 24     Second, as discussed, the contract plainly entitles Myers to the remaining amount owed on the contract — not to all the

---

[3] Myers also asserts that the district court erroneously awarded him "actual damages" by ordering payment of the remaining amount owed on the contract. However, the court's order does not award him damages; it orders that the Hookses pay the amount owed under the destruction clause.

insurance proceeds. To the extent that the parties' past treatment of the clause suggests otherwise, we do not consider extrinsic expressions of intent. *See Fort Lyon Canal,* 167 P.3d at 729 ("[E]xtrinsic evidence of intent can never contradict or change the language of a contract or justify an interpretation not reasonably derivable from the contract itself."). So we perceive no error with the court's interpretation. *See French,* ¶ 24.

## B.     The Hookses' Breaches

¶ 25     Myers contends that the district court's conclusion that the Hookses' breaches were not material is unsupported by the record.[4] We disagree.

¶ 26     "Whether there has been a material breach of contract turns upon the importance or seriousness of the breach and the likelihood that the injured party nonetheless received, or will receive, substantial performance under the contract." *Interbank*

---

[4] To the extent that Myers attempts to raise a claim for conversion, he does not develop that argument so we decline to address it. *See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein,* 2014 COA 171, ¶ 35 (declining to address conclusory argument presented without authority); *Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo. App. 2010) (Appellate courts "will not consider a bald legal proposition presented without argument or development.").

*Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1228 (Colo. App. 2000). A material breach renders substantial performance impossible. *Id.* at 1229. Whether a party materially breached a contract is a factual question that we will only disturb if it is clearly erroneous and unsupported by the record. *Id.*

¶ 27    The district court determined that the Hookses had breached the contract by failing to designate Myers as the named insured on the insurance policy. But the court found that the insurance payout was more than what was owed on the contract. Because Myers was only entitled to the amount owed on the contract, his inability to participate in the insurance payout negotiations was irrelevant and the breach did not cause him any damages. The court similarly concluded that the Hookses breached the contract by failing to notify Myers that they did not want his personal property before destroying it, but Myers was only entitled to the value of the property that was destroyed, and he failed to prove actual damages at trial. Thus, the court awarded nominal damages of one dollar for each breach. The court also rejected Myers' assertion that the parties should be released from the contract

because "the breaches [were] not substantial [and] the injury caused [was] not irreparable."

¶ 28     By concluding that the Hookses' breaches did not result in any damages to Myers, the court impliedly concluded that Myers was still able to receive the benefit of the contract and substantial performance was not rendered impossible. *See id.* at 1229. Because the breaches were not material and Myers failed to establish any damages, we perceive no error in the court's conclusion. *See id.* (concluding the trial court properly found a developer's breach was nonmaterial when the water districts could not show they were damaged).

¶ 29     We are not otherwise persuaded by Myers' contention that "actual damages are evident because the Hookses received over $365,900 in insurance proceeds." As discussed, Myers is only entitled to the amount of insurance proceeds necessary to pay the remaining balance owed on the contract. And as to Myers' personal property damages claim, he did not provide a trial transcript or specific record cites to support his contention. So we assume that the record supports the court's finding that he failed to prove those damages. *See In re Marriage of Dean,* 2017 COA 51, ¶ 13 ("Where

the appellant fails to provide . . . a transcript, the [appellate] court must presume that the record supports the judgment."); *Clements v. Davies*, 217 P.3d 912, 916 (Colo. App. 2009) (absent an adequate record to demonstrate their claims of error, we presume the evidence fully supports the court's ruling); C.A.R. 28(a)(7)(B) (Arguments "must contain . . . a clear and concise discussion of the grounds upon which the party relies in seeking a reversal or modification of the . . . rulings of the lower court or tribunal, with citations to the authorities and parts of the record on which the appellant relies.").

¶ 30    Myers also contends that the Hookses' breaches amount to unsatisfied conditions precedent or noncompliance with the contract's covenants that preclude conveyance of title to the real property. Because Myers fails to cite where in the record he raised this argument before the district court, we decline to address his contention. *See* C.A.R. 28(a)(5) (an appellant's brief must include the relevant facts and procedural history with appropriate references to the record); *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("In civil cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first

time on appeal."); *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997).

¶ 31    We perceive no error in the court's ruling that the Hookses did not materially breach the contract or that Myers must convey title to the real property to the Hookses on full payment of the remaining amount owed on the contract. *See Interbank*, 12 P.3d at 1228; *French*, ¶ 24.

## C.    Land Installment Contract

¶ 32    Myers contends that the district court erroneously labelled the "rent to own" contract as a "land installment" contract. He argues that a land installment contract has "certain statutory rights" but acknowledges that those rights "were never raised or pleaded here," nor were they asserted as an affirmative defense. He also argues that "[t]he court's erroneous label as a 'installment land contract' fundamentally altered the legal framework of the contract," but he does not explain how the court's label did so. Because Myers' argument is undeveloped and conclusory, we decline to address it. *See Weinstein*, ¶ 35; *Barnett*, 252 P.3d at 19.

17

### D. Unjust Enrichment Claim

¶ 33    Myers contends that the district court erred by concluding that his unjust enrichment claim was abandoned. We reject this contention because an unjust enrichment claim cannot stand when a legally enforceable contract exists. *See Bd. of Governors of Colo. State Univ. v. Alderman*, 2025 CO 9, ¶ 44 ("[A] party cannot properly state a claim for unjust enrichment when a legally enforceable contract exists that covers the same subject matter and that contract has not been abrogated or rescinded.").

### E. "New Argument"

¶ 34    Myers contends that the district court erroneously allowed the Hookses to introduce the new argument post-trial that the destruction clause only entitled Myers to the remaining amount owed on the contract. We are unable to discern whether the Hookses raised that argument during trial, or if Myers objected to it during trial, because Myers did not provide the trial transcripts on appeal. Without those transcripts, we assume that the record supports the court's order. *Dean*, ¶ 13.

## F. Unequal Treatment

¶ 35    Myers contends that the district court required him to prove his claimed damages for his personal property while not requiring the Hookses to prove their damages.  He argues that this unequal treatment resulted in the Hookses benefiting from receiving the insurance proceeds.  We are not persuaded.

¶ 36    Notably, it does not appear that the Hookses ever requested damages — their complaint only requests a declaratory judgment. And the court did not award them damages — indeed, it ordered the Hookses to pay, from the insurance proceeds, the remaining amount owed on the contract to Myers.  Moreover, Myers has failed to show any other instance of the court treating the parties unequally or with any prejudice beyond taking issue with the court's ruling.  *See People in Interest of A.P.*, 2022 CO 24, ¶ 30 (The party asserting a trial judge was biased must allege more than "[b]are assertions and speculative statements" to show "the judge had a substantial bent of mind against him or her." (citations omitted)).  To the extent that Myers asserts that the court's ruling should be reversed, we reject his request because we have

concluded above that the court interpreted the contract correctly. *See supra* Part III.A.

## IV.  Disposition

¶ 37     We affirm the district court's judgment.

JUDGE FOX and JUDGE MEIRINK concur.